# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

ZEFERINA ADELINA GOMEZ,

    Plaintiff,

    v.

ANDREW SAUL,
Commissioner of Social Security,

    Defendant.

_____/

Case No. 1:18-cv-01162-SKO

ORDER ON PLAINTIFF'S SOCIAL SECURITY COMPLAINT

(Doc. 1)

## I.    INTRODUCTION

On August 24, 2018, Plaintiff Zeferina Adelina Gomez ("Plaintiff") filed a complaint under 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying her application for disability insurance benefits ("DIB") under Title II of the Social Security Act (the "Act"). The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge.[1]

///

---

[1] The parties consented to the jurisdiction of a U.S. Magistrate Judge. (Docs. 8, 18.)

## II.    FACTUAL BACKGROUND

On August 22, 2014, Plaintiff protectively filed an application for DIB payments, alleging she became disabled on February 2, 2012 due to a herniated disc, lumbar spine impairment, severe back pain, cervical spine impairment, and headaches. (Administrative Record ("AR") 19, 21–22, 55, 70, 246–50, 261.) Plaintiff was born on August 4, 1967 and was 44 years old as of the alleged onset date. (AR 28, 55, 70, 246, 261.) Plaintiff has a second-grade education and only speaks Spanish, and has past work experience in food service, and last worked full-time in 2011. (AR 28, 42–43, 322.)

### A.    Relevant Medical Evidence

#### 1.    Madera Community Hospital

On February 2, 2012, Plaintiff was the passenger in a car that was rear-ended while making a right-hand turn. (AR 360–61.) Plaintiff experienced immediate pain in her lower back, neck, and right arm, and was transported to Madera Community Hospital. (AR 361.) The emergency room physician ordered an X-ray of Plaintiff and found mild degenerative narrowing of the L4-L5 disc interspace. (AR 422.) The X-ray was otherwise "unremarkable" with no fractures and no evidence of shoulder or elbow dislocation. (AR 422.)

Plaintiff returned to Madera Community Hospital after the accident for occasional outpatient treatment and physical therapy. (*See* AR 560–620.) On March 1, 2012, the attending physical therapist directed that Plaintiff return for physical therapy twice a week for four weeks and recommended home exercise and biomechanics for self-care. (AR 608–09.) An MRI of Plaintiff's back on February 25, 2015, showed that Plaintiff "broad moderate posterior disk bulging" at L4-L5 and L5-S1, and normal lumbar vertebral alignment. (AR 576.) On March 16, 2015, the attending physician noted that Plaintiff suffered from "debilitating and disabling chronic lower back pain mostly over her right side," and recommended lumbar epidural steroid injections. (AR 575.) Plaintiff received the steroid injections on May 18, 2015. (AR 572–73.)

On July 17, 2015, Plaintiff returned to Madera Community Hospital for a post-operative visit. (AR 566.) Plaintiff reported "[p]ersistent unrelenting lower back pain," and reported that the May 18 steroid injection failed to give her any relief and caused "swelling of [her] face with what

she describes like pimples." (AR 566.) The attending physician noted that further steroid injections would be deferred indefinitely "due to a possibility of adverse allergic reaction" and that surgical procedures would be explored. (AR 566.)

### 2. Donald A. Poladian, D.C.

On February 17, 2012, Plaintiff established care with chiropractor Donald Poladian. (AR 380–82.) Plaintiff saw Dr. Poladian multiple times each month from February 2012 through April 2013. (*See* AR 370–81.) Dr. Poladian's notes memorializing those visits are largely illegible, except for the dates of the visits, and the medical evidence does not contain detailed records from most of the visits. (*See* AR 370–81.)

At the initial visit on February 17, 2012, Dr. Poladian noted Plaintiff reported pain in her neck, mid-back, area between her shoulder blades, joints, upper right arm, right forearm, right hand, lower back, buttocks, hip joint, and right leg. (AR 383.) Plaintiff reported the pain in her lower back was worse when she was sitting, bending, or laying down. (AR 383.) Plaintiff also reported a stiff neck, numbness of her right foot and toes, and that she could not raise her right arm. (AR 383.) Dr. Poladian diagnosed Plaintiff with cervicalgia, thoracic sprain/strain, pain in thoracic spine, sciatica, lumbar sprain/strain, and lumbalgia. (AR 384.)

On December 28, 2012, Dr. Poladian wrote a letter stating that Plaintiff had not returned to work since her accident in February and opining that Plaintiff was "unable, at this time, to return to work as a result of her injuries." (AR 398.) On April 4, 2013, Dr. Poladian wrote an updated opinion letter. (AR 424–28.) In the updated letter, Dr. Poladian stated that he had examined Plaintiff earlier that day and she reported her symptoms included neck pain and stiffness that caused "*serious diminution in her capacity to carry out daily activities.*" (AR 425) (emphasis in original). Dr. Poladian stated Plaintiff reported aching pain in her upper back that radiates into her mid-back, sharp pain in her mid-back, and sharp pain in her lower back, which Plaintiff stated precluded carrying out activities of daily living. (AR 425.) Dr. Poladian noted that Plaintiff had mild-to-moderate restriction in range of motion of her cervical spine, and severe restriction in range of motion of her lumbar spine. (AR 426–27.) Dr. Poladian diagnosed Plaintiff with thoracic sprain/strain; lumbar sprain/strain; lumbago (lower back pain); pain in thoracic spine; cervicalgia (neck pain); lumbar

disc displacement; thoracic or lumbosacral neuritis or radiculitis; and sciatica. (AR 427–28.) Dr. Poladian opined that Plaintiff's impairments had a "high probability" of causing further problems, including "aggravation brought on by normal activities of daily living or new trauma." (AR 428.)

### 3. Michael J. Esposito, M.D.

On July 17, 2012, Plaintiff established care with orthopedic surgeon Michael Esposito. (AR 360–68.) Dr. Esposito examined Plaintiff after her February 2, 2012 car accident, and Plaintiff complained of "constant pain in the low back, with radiating pain into the right leg, posterior calf and foot, and mild pain in the left lower extremity," "numbness and burning in her right calf and foot," and difficulty sitting, standing, and walking. (AR 360.) Dr. Esposito noted that at the time of the accident, Plaintiff was not working. (AR 361.) On examination, Dr. Esposito found that Plaintiff had "focal tenderness along the L3-4, L4-5, and L5-S1 posterior spinous processes and paraspinal muscles," no focal neurological deficit, "mild motor power weakness" on the right side, and decreased sensation in the L5-S1 nerve root distribution to her right foot. (AR 362.) Dr. Esposito diagnosed Plaintiff with lumbar herniated nucleus pulposus at L5-S1 and right L5 radiculopathy. (AR 362.) Dr. Esposito recommended Plaintiff undergo a lumbar transforaminal epidural steroid injection from the right at L5-S1, and prescribed Ultracet for pain. (AR 362–63.)

### 4. Robert Simons, M.D.

On August 5, 2015, Plaintiff established care with neurosurgeon Robert Simons. (AR 639–41.) Dr. Simons' physician assistant noted that Plaintiff neck pain, back pain, muscle rigidity, limited neck motion, right deltoid pain, irregular gait, decreased sensation to right let and foot, ability to heel/toe walk for short duration only, and diminished reflexes. (AR 640.) Dr. Simons ordered an MRI on August 27, 2015, which showed disc herniations at L4-L5 and L5-S1 "with superimposed mild central stenosis at L4-5." (AR 646.)

Dr. Simons next examined Plaintiff on September 14, 2015. (AR 637.) Dr. Simons noted that Plaintiff's general examination was "unremarkable" but that she had mild disc bulging at L4-L5 and L5-S1. (AR 637.) Dr. Simons noted that surgery would be inappropriate in the cervical spine, but may be helpful in the lumbar area. (AR 637.) Dr. Simons diagnosed Plaintiff with lumbar radiculopathy, prolapsed lumbar intervertebral disc, and cervical radiculopathy. (AR 638.)

On February 1, 2016, Dr. Simons noted that Plaintiff reported radiating pain to her right buttocks into the posterior right lower extremity and associated numbness in the foot and leg. (AR 635.) Dr. Simons noted that Plaintiff had "not worked for a lengthy period [of] time and she feels unable to do physical work or prolonged standing." (AR 635.) Dr. Simons ordered an MRI on March 8, 2016, which showed that Plaintiff had disc herniations at L4-L5 and L5-S1 with mild impingement on the bilateral L5 nerve roots and impingement on the S1 nerve root. (AR 642–43.) On March 30, 2016, Dr. Simons stated that Plaintiff had "some features suggesting surgery" and that Plaintiff's condition remained generally unchanged. (*See* AR 632.) Dr. Simons recommended surgery and Plaintiff underwent a lumbar laminotomy at L5-S1 on April 28, 2016. (AR 632, 669.)

Plaintiff visited Dr. Simons for post-operative and follow-up visits multiple times from May 2016 through July 2017. (*See* AR 667, 885, 889–90, 892, 894, 907–909.) At a June 8, 2016 follow-up appointment, Dr. Simons noted that Plaintiff continued to have right leg pain after the laminotomoy, but that her surgical incision was healing well. (AR 908.) Dr. Simons stated he would send Plaintiff for physical therapy and would see her again in 6-8 weeks. (AR 908.) On August 24, 2016, Plaintiff reported that she still had right leg pain, the physical therapy had "made her 'worse,'" and she had "never improved" after the surgery. (AR 894.) Dr. Simons recommended epidural steroid injections. (AR 895.)

On October 26, 2016, on examination of Plaintiff, Dr. Simons found "no percussion tenderness in her lumbar spine" and that her lumbar wound was "unremarkable." (AR 892.) Dr. Simons noted that Plaintiff had "long-standing neural compression" and "may be experiencing chronic neuropathic pain." (AR 892.) Dr. Simons opined that Plaintiff did "not seem able to do gainful employment at this point in time," and directed Plaintiff to return for a follow-up appointment in about six months. (AR 892.) On July 5, 2017, Dr. Simons noted Plaintiff's condition was generally unchanged and stated that "[i]t is doubtful that . . . direct reexploration lumbar spine surgery would be helpful," but that there were surgical options available. (AR 885.) Dr. Simons stated that Plaintiff had "right lower extremity neuropathic pain/nerve damage due to the fact that surgery in the lumbar spine was delayed by approximately 4 years prior to intervention." (AR 885.)

Dr. Simons completed two spinal impairment questionnaires for Plaintiff in 2016 and 2017. (AR 725–30, 867–72.)  In the first questionnaire, completed August 26, 2016, Dr. Simons diagnosed Plaintiff with lumbar radiculopathy, lumbar pain, and cervical radiculopathy.  (AR 725.)  Dr. Simons opined that Plaintiff could sit for 3-4 hours in an 8-hour workday and stand and/or walk for 3-4 hours in an 8-hour workday.  (AR 727.)  Dr. Simons stated that it was medically necessary for Plaintiff to avoid continuous sitting in an 8-hour workday and needed to get up and move around every 4 hours, but did not need to elevate her legs while sitting.  (AR 728.)  Dr. Simons opined that Plaintiff could lift and/or carry between 5 and 20 pounds occasionally and between 20 and over 50 pounds never or rarely.  (AR 728.)  Dr. Simons opined that Plaintiff could "ambulate effectively" and had no significant limitations in reaching, handling, or fingering.  (AR 728–29.)  Dr. Simons stated that vigorous activity would exacerbate Plaintiff's condition, her symptoms would increase if she were placed in a competitive work environment, Plaintiff would experience pain occasionally during an 8-hour workday, she would need to take unscheduled breaks to rest during the day, and she would be absent from work two to three times per month.  (AR 729.)  Dr. Simons stated that his opinion applied only as of August 5, 2015, and not before that date.  (AR 730.)

In his second questionnaire, completed February 18, 2017, Dr. Simons opined that Plaintiff could sit for 4-5 hours in an 8-hour workday and stand and/or walk for 3-4 hours in an 8-hour workday.  (AR 869.)  Dr. Simons stated that it was medically necessary for Plaintiff to avoid continuous sitting in an 8-hour workday and needed to get up and move around every 4-5 hours, but did not need to elevate her legs while sitting.  (AR 870.)  Dr. Simons opined that Plaintiff could lift and/or carry between 0 and 10 pounds frequently, between 10 and 20 pounds occasionally and between 20 and over 50 pounds never or rarely.  (AR 870.)  Dr. Simons opined that Plaintiff could "ambulate effectively" and had no significant limitations in reaching, handling, or fingering.  (AR 870–71.)  Dr. Simons stated that work activity would exacerbate Plaintiff's condition, her symptoms would increase if she were placed in a competitive work environment, Plaintiff would experience pain rarely during an 8-hour workday, she would need to take unscheduled breaks to rest 3 times per day for about 10-15 minutes each time, and she would be absent from work once per month.

(AR 871–72.)  Dr. Simons stated that this second opinion applied as far back as February 2, 2012, Plaintiff's alleged onset date.  (AR 872.)

### 5. Tomas Rios, M.D.

On January 14, 2015, Plaintiff attended a consultative examination with internist Tomas Rios.  (AR 552–56.)  Dr. Rios stated that Plaintiff was able to help with household chores including meal preparation, cooking, and light housekeeping, and was "independent with her activities of daily living."  (AR 552.)  Dr. Rios noted that Plaintiff had "tenderness on palpation of the mid lumbar spine" and tenderness in her neck, and diagnosed Plaintiff with cervical sprain/strain injury, lumbar sprain/strain injury, and degenerative disk disease of the cervical and lumbar spine.  (AR 555.)  Dr. Rios found that Plaintiff had multi-level disk disease at the lumbar and cervical spine but that Plaintiff's "range of motion remains preserved and no findings of nerve root compromise" were noted.  (AR 555.)  Dr. Rios opined that Plaintiff could stand or walk for six hours; had no limitations for sitting; did not require an assistive device; could lift and/or carry 20 pounds occasionally and 10 pounds frequently; could frequently climb steps, stairs, ladders, scaffolds, and ropes, and kneel and crawl; could occasionally stoop and crouch; and had no limitations on manipulative activities or workplace environment activities.  (AR 555–56.)

### 6. State Agency Physicians

On January 28, 2015, Judy Panek, M.D., a Disability Determinations Service medical consultant, assessed the severity of Plaintiff's impairments.  (AR 64–66.)  In assessing Plaintiff's residual functional capacity (RFC),[2] Dr. Panek opined that Plaintiff could lift or carry 20 pounds occasionally and 10 pounds frequently; stand or walk for about 6 hours in an 8-hour workday; sit for about 6 hours in an 8-hour workday; and had unlimited pushing/pulling ability.  (AR 64.)  Dr.

---

[2] RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of 8 hours a day, for 5 days a week, or an equivalent work schedule.  TITLES II & XVI: ASSESSING RESIDUAL FUNCTIONAL CAPACITY IN INITIAL CLAIMS, Social Security Ruling ("SSR") 96-8P (S.S.A. July 2, 1996).  The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments.  *Id*.  "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record including, inter alia, medical records, lay evidence, and 'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'"  *Robbins v. Soc. Sec. Admin*., 466 F.3d 880, 883 (9th Cir. 2006).

Panek found Plaintiff could climb ramps/stairs, balance, kneel, and crawl frequently; and climb ladders/ropes/scaffolds, stoop, and crouch occasionally. (AR 64–65.)

Upon reconsideration, on May 21, 2015, another Disability Determinations Service medical consultant, A. Ahmed, M.D., affirmed Dr. Panek's findings as to the severity of Plaintiff's impairments. (AR 77–80.)

## B. Administrative Proceedings

The Commissioner denied Plaintiff's application for benefits initially on January 29, 2015, and again on reconsideration on May 22, 2015. (AR 85–90, 92–96.) On July 2, 2015, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (AR 97–98.)

On August 21, 2014, Plaintiff appeared with counsel and testified before an ALJ as to her alleged disabling conditions. (AR 37–54.) At the hearing, Plaintiff was assisted by an interpreter because Plaintiff only speaks Spanish. (AR 39–41.) Plaintiff testified she is not a U.S. citizen and has a green card that will expire in 2024. (AR 41–42.) Plaintiff testified that she has not worked for a long time because she cannot lift things and has physical impairments. (AR 42.) Plaintiff stated she had surgery on her waist and back, but the doctor said she cannot have further necessary surgery yet because she has nerve damage. (AR 42–43.) Plaintiff testified she takes Naproxen for pain and her daughter and husband do the household chores. (AR 43.) She went to Mexico for one day in June 2017 to visit her mom. (AR 43–44.) Plaintiff testified that she cannot stand for a long time and still has pain in her head and legs, and that her feet go numb at times. (AR 44.) She stated her problems were caused by a car accident. (AR 45.) Plaintiff further testified she can stand for about 30 minutes, cannot lift a gallon of milk, cannot tie her shoes or do other daily activities because of the pain, and cannot work. (AR 45–47.)

A Vocational Expert ("VE") testified at the hearing that Plaintiff had past work as a sorter, Dictionary of Occupational Titles (DOT) code 59.687-186, which was light work with a specific vocational preparation (SVP)[3] of 2; and a packer, DOT code 525.687-082, which was heavy work

---

[3] Specific vocational preparation (SVP), as defined in DOT, App. C, is the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation. DOT, Appendix C – Components of the Definition Trailer, 1991 WL 688702 (1991). Jobs in the DOT are assigned SVP levels ranging from 1 (the lowest level – "short demonstration only") to 9 (the highest level – over 10 years of preparation). *Id.*

with a SVP of 2. (AR 48–49.) The ALJ asked the VE to consider a person of Plaintiff's age, education, and with her work background. (AR 49.) The VE was also to assume this person was illiterate in the English language, and could perform sedentary work except would be limited to lifting or carrying 10 pounds occasionally, sitting for 4 hours, standing or walking for 1 hour each, could never climb, balance, stool, kneel, crouch, or crawl, and would need unscheduled rest breaks that would cause her to be off task 20 percent of the workday. (AR 49.) The VE testified that such a person could not perform any jobs. (AR 49.)

In a second hypothetical, the ALJ asked the VE to consider an individual with the limitations described in the first hypothetical except that the person could perform light work but could never climb ladders, ropes, and scaffolds, could occasionally climb ramps and stairs, could occasionally balance, stoop, kneel, or crouch, could never crawl, and could never work around hazards like unprotected heights. (AR 49–50.) The VE testified that such an individual could perform Plaintiff's past relevant work. (AR 50.) The VE testified the individual could also perform other jobs in the national economy, including: packing line worker, DOT code 753.687-038, which is light work with a SVP of 2 and over 600,000 jobs available in the national economy; packing inspector, DOT code 753.687-038, which is light work with a SVP of 2 and over 300,000 jobs available; and sorter, which is light work with a SVP of 2 and over 500,000 jobs available. (AR 50.)

Plaintiff's counsel then asked the VE to consider additional hypotheticals. (AR 51–52.) Plaintiff's counsel asked the VE to consider an individual with the limitations described in the ALJ's second hypothetical, but who would need to change positions between sitting and standing twice every hour. (AR 51.) The VE responded that the individual could perform the job of sorter. (AR 51.) In a fourth hypothetical, Plaintiff's counsel asked the VE to consider an individual with the limitations described in the ALJ's second hypothetical, but who could only occasionally use their right dominant hand to handle, finger, and feel, and could occasionally reach on the right. (AR 51.) The VE testified that such an individual could not perform any work. (AR 52.) Finally, in a fifth hypothetical, Plaintiff's counsel asked the VE to consider an individual with the limitations described in the ALJ's second hypothetical, but who would have no "assembly line pace, or strict production quotas." (AR 52.) The VE testified that such an individual could not perform the

packing line worker or packing inspector jobs. (AR 52.)

**C.  The ALJ's Decision**

In a decision dated September 20, 2017, the ALJ found that Plaintiff was not disabled, as defined by the Act. (AR 19–30.) The ALJ conducted the five-step disability analysis set forth in 20 C.F.R. § 404.1520. (AR 21–30.) The ALJ decided that Plaintiff had not engaged in substantial gainful activity from February 2, 2012, the alleged onset date, through December 31, 2016, the date last insured (step one). (AR 21.) At step two, the ALJ found that Plaintiff had the severe impairment of "degenerative disc disease of the cervical and lumbar spine." (AR 21.) The ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the Listings (step three). (AR 21.)

The ALJ assessed Plaintiff's RFC and applied the RFC assessment at steps four and five. *See* 20 C.F.R. § 404.1520(a)(4) ("Before we go from step three to step four, we assess your residual functional capacity … We use this residual functional capacity assessment at both step four and step five when we evaluate your claim at these steps."). The ALJ determined that Plaintiff retained the RFC:

> to perform light work as defined in 20 CFR 404.1567(b) except with the following limitations: is essentially illiterate in the English language; could never climb ladders, ropes, and scaffolds; could occasionally climb ramps and stairs; could occasionally balance, stoop, kneel, or crouch; could never crawl; could never [be] around hazards such as moving, dangerous machinery or unprotected heights.

(AR 22.) Although the ALJ recognized that Plaintiff's impairments "could reasonably be expected to cause the alleged symptoms[,]" he rejected Plaintiff's subjective testimony as "not entirely consistent with the medical evidence and other evidence in the record[.]" (AR 24.) At step five, the ALJ found that Plaintiff could perform her past relevant work as a sorter and could also make "a successful adjustment to other work that existed in significant numbers in the national economy." (AR 27–29.)

Plaintiff sought review of this decision before the Appeals Council, which denied review on June 28, 2018. (AR 1–6.) Therefore, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. § 404.981.

### III.      LEGAL STANDARD

**A.    Applicable Law**

An individual is considered "disabled" for purposes of disability benefits if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). However, "[a]n individual shall be determined to be under a disability only if [her] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

"The Social Security Regulations set out a five-step sequential process for determining whether a claimant is disabled within the meaning of the Social Security Act." *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 20 C.F.R. § 404.1520). The Ninth Circuit has provided the following description of the sequential evaluation analysis:

In step one, the ALJ determines whether a claimant is currently engaged in substantial gainful activity. If so, the claimant is not disabled. If not, the ALJ proceeds to step two and evaluates whether the claimant has a medically severe impairment or combination of impairments. If not, the claimant is not disabled. If so, the ALJ proceeds to step three and considers whether the impairment or combination of impairments meets or equals a listed impairment under 20 C.F.R. pt. 404, subpt. P, [a]pp. 1. If so, the claimant is automatically presumed disabled. If not, the ALJ proceeds to step four and assesses whether the claimant is capable of performing her past relevant work. If so, the claimant is not disabled. If not, the ALJ proceeds to step five and examines whether the claimant has the [RFC] . . . to perform any other substantial gainful activity in the national economy. If so, the claimant is not disabled. If not, the claimant is disabled. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). "If a claimant is found to be 'disabled' or 'not disabled' at any step in the sequence, there is no need to consider subsequent steps." *Tackett*, 180 F.3d at 1098 (citing 20 C.F.R. § 404.1520).

"The claimant carries the initial burden of proving a disability in steps one through four of

the analysis." *Burch*, 400 F.3d at 679 (citing *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989)). "However, if a claimant establishes an inability to continue her past work, the burden shifts to the Commissioner in step five to show that the claimant can perform other substantial gainful work." *Id.* (citing *Swenson*, 876 F.2d at 687).

**B.    Scope of Review**

"This court may set aside the Commissioner's denial of disability insurance benefits [only] when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett*, 180 F.3d at 1097 (citation omitted). "Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) (citing *Tackett*, 180 F.3d at 1098). "Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

"This is a highly deferential standard of review …" *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009). "The ALJ's findings will be upheld if supported by inferences reasonably drawn from the record." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citation omitted). Additionally, "[t]he court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Id.*; *see, e.g.*, *Edlund*, 253 F.3d at 1156 (citations omitted) ("If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner.").

Nonetheless, "the Commissioner's decision 'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Tackett*, 180 F.3d at 1098 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). "Rather, a court must 'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" *Id.* (quoting *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993)).

Finally, courts "may not reverse an ALJ's decision on account of an error that is harmless." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055–56 (9th Cir. 2006)). Harmless error "exists when it is clear from the record that 'the ALJ's error was inconsequential to the ultimate nondisability determination.'" *Tommasetti*, 533

F.3d at 1038 (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006)). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (citations omitted).

## IV. DISCUSSION

Plaintiff contends that the ALJ erred in the evaluation of the medical opinion evidence and Plaintiff's credibility and in the formulation of Plaintiff's RFC. (*See* Doc. 14 at 19–36; Doc. 15 at 10–19.) The Commissioner responds that the ALJ properly evaluated the medical opinion evidence and Plaintiff's credibility, and the RFC assessment is supported by substantial evidence. (Doc. 15 at 10–19.) For the reasons stated below, the Court agrees with the Commissioner's position.

### A. The ALJ's Consideration of the Medical Opinions

#### 1. Legal Standard

The ALJ must consider and evaluate every medical opinion of record. *See* 20 C.F.R. § 404.1527(b) and (c) (applying to claims filed before March 27, 2017); *Mora v. Berryhill*, No. 1:16–cv–01279–SKO, 2018 WL 636923, at *10 (E.D. Cal. Jan. 31, 2018). In doing so, the ALJ "cannot reject [medical] evidence for no reason or the wrong reason." *Mora*, 2018 WL 636923, at *10.

Cases in this circuit distinguish between three types of medical opinions: (1) those given by a physician who treated the claimant (treating physician); (2) those given by a physician who examined but did not treat the claimant (examining physician); and (3) those given by a physician who neither examined nor treated the claimant (non-examining physician). *Fatheree v. Colvin*, No. 1:13–cv–01577–SKO, 2015 WL 1201669, at *13 (E.D. Cal. Mar. 16, 2015). "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001) (citations omitted); *see also Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007) ("By rule, the Social Security Administration favors the opinion of a treating physician over non-treating physicians." (citing 20 C.F.R. § 404.1527)). The opinions of treating physicians

"are given greater weight than the opinions of other physicians" because "treating physicians are employed to cure and thus have a greater opportunity to know and observe the patient as an individual." *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996) (citations omitted).

To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record; and (2) clinical findings support the opinions. An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. *Lester v. Chater*, 81 F.3d 821, 830–31 (9th Cir. 1995). In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate reasons that are supported by substantial evidence." *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017) (citing *Ryan*, 528 F.3d at 1198); *see also Lester*, 81 F.3d at 830–31. "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (supported by different independent clinical findings), the ALJ may resolve the conflict. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing *Magallanes*, 881 F.2d at 751). The regulations require the ALJ to weigh the contradicted treating physician opinion, *Edlund v. Massanari*, 253 F.3d 1152, 1157 (9th Cir. 2001),[4] except that the ALJ in any event need not give it any weight if it is conclusory and supported by minimal clinical findings. *Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999) (treating physician's conclusory, minimally supported opinion rejected); *see also Magallanes*, 881 F.2d at 751. The opinion of a non-examining professional, by itself, is insufficient to reject the opinion of a treating or examining professional. *Lester*, 81 F.3d at 831.

---

[4] The factors include: (1) length of the treatment relationship; (2) frequency of examination; (3) nature and extent of the treatment relationship; (4) supportability of diagnosis; (5) consistency; and (6) specialization. 20 C.F.R. § 404.1527.

## 2. Analysis Regarding Plaintiff's Treating Physician Dr. Simons

Plaintiff alleges—and the record reflects—that Dr. Simons was Plaintiff's treating physician. (*See, e.g.*, Doc. 14 at 21.) "If . . . a treating [physician's] opinion . . . is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record, [the Commissioner] will give it controlling weight." 20 C.F.R. § 404.1527(c)(2); *cf. Reddick*, 157 F.3d at 725 ("Where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for clear and convincing reasons supported by substantial evidence in the record." (citation omitted)). "If there is 'substantial evidence' in the record contradicting the opinion of the treating physician, the opinion of the treating physician is no longer entitled to 'controlling weight.'" *Orn*, 495 F.3d at 632 (quoting 20 C.F.R. § 404.1527(d)(2)).

"If a treating physician's opinion is not given 'controlling weight' because it is not 'well-supported' or because it is inconsistent with other substantial evidence in the record, the [Commissioner] considers specified factors in determining the weight it will be given." *Id.* at 631. These factors include (1) the "[l]ength of the treatment relationship and the frequency of examination;" (2) the "[n]ature and extent of the treatment relationship;" (3) the "[s]upportability" of the opinion;" (4) the "[c]onsistency" of the opinion "with the record as a whole;" (5) whether the opinion is from "a specialist about medical issues related to his or her area of specialty;" and (6) "any other factors [the claimant] or others bring to [the ALJ's] attention, or of which [the ALJ is] aware, which tend to support or contradict the opinion." 20 C.F.R. § 404.1527(c)(2)–(6).

Further, "[e]ven if the treating doctor's opinion is contradicted by another doctor, the ALJ may not reject this opinion without providing 'specific and legitimate reasons' supported by substantial evidence in the record." *Reddick*, 157 F.3d at 725 (quoting *Lester*, 81 F.3d at 830). *See also Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017) (citing *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008)). "This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making

findings." *Id.* (citing *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)); *see, e.g.*, *Chaudhry v. Astrue*, 688 F.3d 661, 671 (9th Cir. 2012) ("The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." (quoting *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009))); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999) ("Opinions of a nonexamining, testifying medical advisor may serve as substantial evidence when they are supported by other evidence in the record and are consistent with it." (citing *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995))); *Matney on Behalf of Matney v. Sullivan*, 981 F.2d 1016, 1020 (9th Cir. 1992) (noting that "inconsistencies and ambiguities" in a treating physician's opinion "represent specific and legitimate reasons for" rejecting the opinion). "The ALJ must do more than offer his conclusions." *Reddick*, 157 F.3d at 725. "He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id.* (citing *Embrey v. Bowen*, 849 F.2d 418, 421–22 (9th Cir. 1988)).

Dr. Simons treated Plaintiff from approximately August 2015 until at least July 2017. (*See* AR 639, 885.) On August 26, 2016, Dr. Simons opined, among other things, that Plaintiff could lift and/or carry between 5 and 20 pounds occasionally and between 20 and over 50 pounds never or rarely, vigorous activity would exacerbate Plaintiff's condition, her symptoms would increase if she were placed in a competitive work environment, she would experience pain occasionally during an 8-hour workday, she would need to take unscheduled breaks to rest during the day, and she would be absent from work two to three times per month. (AR 729.) Dr. Simons stated that opinion applied only as of August 5, 2015. (AR 730.) On February 18, 2017, Dr. Simons opined, among other things, that Plaintiff could lift and/or carry between 0 and 10 pounds frequently, between 10 and 20 pounds occasionally and between 20 and over 50 pounds never or rarely, work activity would exacerbate Plaintiff's condition, her symptoms would increase if she were placed in a competitive work environment, Plaintiff would experience pain rarely during an 8-hour workday, she would

need to take unscheduled breaks to rest 3 times per day for about 10-15 minutes each time, and she would be absent from work once per month. (AR 870–72.) Dr. Simons stated that opinion applied as of Plaintiff's alleged onset date of February 2, 2012. (AR 872.)

In weighing Dr. Simons' opinion, the ALJ stated:

> The undersigned gives great weight to Dr. Simon's [sic] opinions that [Plaintiff] could lift and carry up to 20 pounds because this is consistent with the opinions of Drs. Rios, Panek, and Ahmed and with the evidence in the record as a whole, as discussed above. However, little weight is given to the remainder of Dr. Simon's [sic] opinions. First, Dr. Simon's [sic] opinions are quite conclusory and cite to insufficient objective clinical findings to support Dr. Simon's [sic] assessments that [Plaintiff] could stand/walk and sit for only up to four hours each. Second, Dr. Simon's [sic] assessments that [Plaintiff] could stand/walk for only up to four hours each are inconsistent with his own conclusions elsewhere in the forms that [Plaintiff] could walk a block at a reasonable pace on rough or uneven surfaces, use public transportation, carry out ambulatory activities such as shopping and banking, and climb stairs at a reasonable pace . . . Third, not only are clinical findings not sufficiently cited in Dr. Simon's [sic] opinions, they are also not generally supported by his clinical notes which negative straight leg raises and the ability to heel-toe walk . . . Fourth, the opinions are inconsistent with the evidence in the record as a whole. As discussed above, this includes evidence of [Plaintiff's] reported ability to attend to her personal care without problems; perform household chores such as washing dishes, cleaning the kitchen every other day for two hours, and doing laundry; prepare meals for the family that can take as long as two and a half hours; and shop for groceries every other week for up to two hours. Fifth, in his subsequent opinion, Dr. Simon [sic] provides no explanation for why he then believed [Plaintiff] had been limited to a narrow range of light work since February 2012, a date which is over years before Dr. Simon [sic] even began treating [Plaintiff]. Therefore, because the opinions are not supported by the evidence, they appear to rely quite heavily on [Plaintiff's] subjective report of symptoms and limitations and to uncritically accept as true most, if not all, of what [Plaintiff] reported. However, as explained elsewhere in this decision, there exists good reasons to question the consistency of [Plaintiff's] subjective complaints with the objective evidence. For these reasons, Dr. Simon's [sic] opinions are overall given partial weight, as described above.

(AR 26–27) (citations omitted). Although not explicitly stated by the ALJ, Dr. Simons' opinions were inconsistent with those of Dr. Rios, Dr. Panek, and Dr. Ahmed, except for his opinion as to Plaintiff's ability to lift or carry up to 20 pounds. (*Compare* AR 725–30, AR 867–72 *with* AR 552–56, 64–66, 77–80.) Thus, the ALJ was only required to state "specific and legitimate" reasons, supported by substantial evidence, for assigning little weight to Dr. Simons' opinion. *Trevizo*, 871 F.3d at 675 (citing *Ryan*, 528 F.3d at 1198); *see also Lester*, 81 F.3d at 830.

17

Here, the ALJ properly gave significant weight to Dr. Simons' opinion that Plaintiff could lift up to 20 pounds and little weight to the remainder of Dr. Simons' opinion. First, as stated above, most of Dr. Simons' assessments as to the severity of Plaintiff's impairments and Plaintiff's RFC, aside from his opinion that Plaintiff could lift or carry up to 20 pounds, are inconsistent with those of Dr. Rios, Dr. Panek, and Dr. Ahmed. (*Compare* AR 725–30, AR 867–72 *with* AR 552–56, 64–66, 77–80.) For example, Dr. Simons opined that Plaintiff could sit for 3–4 hours in an 8-hour workday and stand/walk for only 3–4 hours, while Dr. Panek and Dr. Ahmed opined that Plaintiff could sit, stand and walk for 6 hours in an 8-hour workday. (AR 64, 78, 727, 869.) Next, Dr. Simons' opinion that Plaintiff was only able to stand/walk and sit for up to four hours each is inconsistent with his statements that Plaintiff could walk a block at a reasonable pace on rough or uneven surfaces; use standard public transportation; carry out routine ambulatory activities including shopping and banking; and climb stairs a reasonable pace. (*See* AR 728–29.)

Dr. Simons' opinion is also somewhat inconsistent with certain of his treatment notes stating that Plaintiff could perform toe and heel walking and straight leg raises. (AR 885, 892.) The ALJ also correctly found that Dr. Simons' opinions themselves were contradictory in that in the first opinion, Dr. Simons stated the limitations imposed were effective only as of August 5, 2015, and in the second opinion Dr. Simons stated the limitations were effective as of February 2, 2012, with no explanation for the change. (*Compare* AR 730 *with* AR 872.)

As described above, the ALJ gave a comprehensive, detailed explanation for his decision to discount the opinions of Dr. Simons, including specific citations to the record and multiple specific and legitimate reasons. (*See* AR 26–27.)

Thus, the ALJ gave sufficient reasons for rejecting Dr. Simons' opinion, and properly rejected the opinion by pointing out "inconsistencies and ambiguities" in Dr. Simons' treatment notes and inconsistencies with the medical evidence in the record, including the opinions of Dr. Rios, Dr. Panek, and Dr. Ahmed. *See Matney on Behalf of Matney*, 981 F.2d at 1020.

Finally, to the extent Plaintiff argues the ALJ improperly rejected Dr. Simons' opinion that Plaintiff was unable to work, that is a conclusion reserved for the Commissioner. *See Murillo v. Colvin*, No. CV 12-3402-MAN, 2013 WL 5434168, at *4 (C.D. Cal. Sept. 27, 2013) ("[T]he ALJ provided a specific and legitimate reason for disregarding [the treating physician's] ultimate conclusion . . . that plaintiff is disabled" (citing 20 C.F.R. § 404.1527(e)(1)); *Soroka v. Berryhill*, No. 1:17-CV-01571-GSA, 2018 WL 6243020, at *10 (E.D. Cal. Nov. 29, 2018) ("A conclusory opinion that a claimant is disabled is entitled to little weight since the Commissioner 'will not give any significance to the source of an opinion on issues reserved to the Commissioner,' including whether a claimant is disabled" (quoting *Calhoun v. Berryhill*, 734 F. App'x 484, 487 (9th Cir. 2018)). Thus, the ALJ properly rejected Dr. Simons' opinion on the issue of disability as well.

### 3. Analysis Regarding Plaintiff's Chiropractor Dr. Poladian

Dr. Poladian was Plaintiff's chiropractor and treated her from approximately February 2012 through April 2013. (*See, e.g.,* AR 370–84, 398, 424–28.)

Dr. Poladian opined in December 2012 that Plaintiff was "unable, at this time, to return to work as a result of her injuries." (AR 398.) In April 2013, Dr. Poladian again opined Plaintiff was unable to return to work and that Plaintiff's condition caused serious diminution in her ability to carry out daily activities. (AR 424–28.) In rejecting Dr. Poladian's opinions, along with other opinions the ALJ found "conclusory," the ALJ stated:

> As a whole, these opinions that [Plaintiff] needed to be off work or to avoid certain activities are given little weight. These opinions were intended as temporary restrictions on [Plaintiff's] activities in order to evaluate and treat her symptoms, to prevent further exacerbation of her symptoms, or to allow her time to recover immediately following surgery. Thus, as these limitations were temporary in nature, they do not reflect an assessment of [Plaintiff's] overall level of functioning. In addition, to the extent that the opinions indicate [Plaintiff] was unable to work, the opinions are inconsistent with the above-discussed medical evidence and [Plaintiff's] activities of daily living. Moreover, as an opinion on an issue reserved to the Commissioner, these statements concerning [Plaintiff's] ability to work are not entitled to controlling weight and are not given special significance. For these reasons, these opinions are given little weight.

(AR 27.)

Chiropractors, such as Dr. Poladian, are not included in the list of "acceptable medical sources" who may provide an opinion as to whether a claimant has a medically determinable impairment. 20 C.F.R. §§ 404.1513(a); 404.1527(b);[5] *Figueroa v. Astrue*, No. 2:10–cv–01818 KJN, 2011 WL 4084852, at *3 (E.D. Cal. Sept. 13, 2011) ("Under the applicable regulations, chiropractors . . . are not 'acceptable medical sources.' . . . Only acceptable medical sources may provide medical opinions"); *see also Green*, 2019 WL 3253881, at *7. Instead, chiropractors are "other sources," whose opinions are given less weight than those from "acceptable medical sources," but who may help the ALJ "understand how [the claimant's] impairment affects [the claimant's] ability to work." *Lederle v. Astrue*, No. 1:09–cv–01736–JLT, 2011 WL 839346, at *11 (E.D. Cal. Feb. 17, 2011) (citing *Gomez v. Chater*, 74 F.3d 967, 970–71 (9th Cir. 1996)); 20 C.F.R. §§ 404.913(d), 404.1513(d). While chiropractors are not "acceptable medical sources" for evidence of impairment, the ALJ still must "provide reasons that are germane to the witness" when discounting their opinions. *Hill v. Comm'r*, No. 1:14–cv–01813–SAB, 2016 WL 5341274, at *2 (E.D. Cal. Sept. 23, 2016) (citing *Molina*, 674 F.3d at 1111).

Here, the ALJ provided germane reasons for discounting Dr. Poladian's opinions. Specifically, the ALJ stated that Dr. Poladian's opinion was intended as a temporary restriction on Plaintiff's activities to prevent exacerbation of symptoms. (*See* AR 27.) The ALJ also noted that to the extent Dr. Poladian opined that Plaintiff was unable to work, that is a decision reserved to the Commissioner. (*See* AR 27.)

In addition, Dr. Poladian's letters fail to make a clear recommendation or give a clear opinion as to Plaintiff's functioning ability beyond Plaintiff's own subjective complaints, and his opinions

---

[5] 20 C.F.R. § 404.1527 was amended effective March 27, 2017, and the amended version applies to applications filed on or after that date. 20 C.F.R. § 404.1520c. Because Plaintiff's application was filed August 22, 2014, the older version of the regulation applies here. *See Green v. Saul*, No. 1:18-cv-00775-GSA, 2019 WL 3253881, at *7 (E.D. Cal. Jul. 19, 2019) (not

consist mostly of conclusory statements. For example, in his April 4, 2013 letter, Dr. Poladian states that certain symptoms of Plaintiff "*preclude[] carrying out* activities of daily living" and cause "*serious* diminution in her capacity to carry out daily activities." (AR 425) (emphasis in original). However, these statements are included in the section titled "current complaints," and they appear to simply be recitations of Plaintiff's subjective complaints, rather than Dr. Poladian's opinion. (*See, e.g.,* AR 425 ("[Plaintiff] stated her third symptom is sharp and aching pain in the mid back bilaterally. It occurs between three fourths and all of the time she is awake, and *precludes carrying out* activities of daily living.") (emphasis in original). Beyond those statements, Dr. Poladian's objective opinion is limited to a general statement that Plaintiff may experience more problems later and that activities of daily living could aggravate the problems. (AR 428.) Thus, the ALJ properly rejected Dr. Poladian's opinion.

**B.     The ALJ Did Not Err in His Credibility Determination**

**1.     Legal Standard**

In evaluating the credibility of a claimant's testimony regarding subjective pain, an ALJ must engage in a two-step analysis. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment that could reasonably be expected to produce the pain or other symptoms alleged. *Id.* The claimant is not required to show that her impairment "could reasonably be expected to cause the severity of the symptom [he] has alleged; [he] need only show that it could reasonably have caused some degree of the symptom." *Id.* (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)). If the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if he gives "specific, clear and convincing reasons" for the rejection. *Id.* As the Ninth Circuit has explained:

> The ALJ may consider many factors in weighing a claimant's credibility, including (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other

testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities. If the ALJ's finding is supported by substantial evidence, the court may not engage in second-guessing.

*Tommasetti*, 533 F.3d at 1039 (citations and internal quotation marks omitted); *see also Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1226–27 (9th Cir. 2009); 20 C.F.R. § 404.1529. Other factors the ALJ may consider include a claimant's work record and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains. *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

The clear and convincing standard is "not an easy requirement to meet" and it "is the most demanding [standard] required in Social Security cases." *Garrison*, 759 F.3d at 1015 (citation omitted). "General findings are insufficient" to satisfy this standard. *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)). "[R]ather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.* (quoting *Lester*, 81 F.3d at 834); *see, e.g., Vasquez v. Astrue*, 572 F.3d 586, 592 (9th Cir. 2008) ("To support a lack of credibility finding, the ALJ [is] required to 'point to specific facts in the record which demonstrate that [the claimant] is in less pain than she claims.'" (quoting *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993)); *cf. Burrell*, 775 F.3d at 1138 (stating that the Ninth Circuit's "decisions make clear that [courts] may not take a general finding . . . and comb the administrative record to find specific" support for the finding).

## 2. Analysis

The ALJ found Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." (AR 22.) The ALJ also found that "[Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]" (AR 22.) Since the ALJ found Plaintiff's "medically determinable impairments could reasonably be expected to

cause the alleged symptoms," the only remaining issue is whether the ALJ provided "specific, clear and convincing reasons" for his adverse credibility finding. *See Vasquez*, 572 F.3d at 591.

The ALJ found that Plaintiff's symptom statements were less than credible because (1) they were inconsistent with the medical evidence in the record; (2) they were inconsistent with Plaintiff's conservative treatment; and (3) they were inconsistent with Plaintiff's reported daily activities, including a trip to Mexico in June 2017. (AR 24–25.) Plaintiff contends the ALJ's adverse credibility finding was unsupported by substantial evidence because the ALJ mischaracterized Plaintiff's testimony and the medical evidence. (Doc. 14 at 34–36.) The Commissioner responds that the ALJ properly discounted Plaintiff's subjective complaints. (Doc. 15 at 14–16.) For the following reasons, the Court agrees with the Commissioner's position.

### a. Objective Evidence of Record

The ALJ discounted Plaintiff's testimony in part because her alleged symptoms were inconsistent with the objective evidence of record, including relevant medical evidence and opinions of physicians. (*See* AR 24–26.) The Court finds this is a valid clear and convincing reason to discredit Plaintiff's testimony.

While subjective symptom testimony cannot be rejected solely on the ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining Plaintiff's credibility. *Rollins*, 261 F.3d at 957 (citing 20 C.F.R. § 404.1529(c)(2)); *see Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) ("[L]ack of medical evidence . . . is a factor that the ALJ can consider in his credibility analysis.").

"[T]he Ninth Circuit has repeatedly emphasized that, 'in evaluating the credibility of pain testimony after a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain.'" *Ondracek v. Comm'r of Soc. Sec.*, No. 1:15-cv-01308-SKO, 2017 WL 714374, at *8 (E.D. Cal. Feb. 22, 2017) (quoting *Burch*, 400 F.3d at 680);

*see, e.g., Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) ("[S]ubjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence …"); *see also* SSR 96–7p ("An individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded solely because they are not substantiated by objective medical evidence."). Nonetheless, "lack of medical evidence … is a factor that the ALJ can consider in his credibility analysis." *Burch*, 400 F.3d at 681. Stated differently, "[a]lthough the inconsistency of objective findings with subjective claims may not be the sole reason for rejecting subjective complaints of pain, it is one factor which may be considered with others." *Salas v. Colvin*, No. 1:13-cv-00429-BAM, 2014 WL 4186555, at *6 (E.D. Cal. Aug. 21, 2014) (citations omitted).

Here, the ALJ discounted Plaintiff's subjective testimony, in part, because her complaints were inconsistent with the medical evidence. (AR 24.) The ALJ provided sufficient support for this conclusion, including an extensive discussion regarding the relevant medical evidence in the RFC analysis. (*See* AR 22–27.) The record contains evidence of Plaintiff's improved functionality after the February 2, 2012 accident, and evidence of improvement following Plaintiff's surgery on April 28, 2016. For example, Dr. Rios found that Plaintiff was able to help with household chores including meal preparation, cooking, and light housekeeping, was "independent with her activities of daily living," and that although Plaintiff had multi-level disk disease, her range of motion was preserved and her nerve roots were unremarkable. (AR 552, 555.) Dr. Rios, Dr. Panek and Dr. Ahmed each contradicted Plaintiff's claims regarding the severity of her impairments, each opining that Plaintiff could perform a range of light work. (*See* AR 64–66, 77–79, 555–56.) The contradiction between Plaintiff's subjective complaints and the doctors' medical opinions is a sufficient basis to reject Plaintiff's subjective testimony. *See Carmickle v. Commissioner, Social Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008).

The record also contains some medical evidence that supports Plaintiff's statements,

including the opinions of Dr. Simons and Dr. Poladian.  (*See* AR 398, 424–28, 725–30, 867–72.) However, it is the function of the ALJ to resolve any ambiguities in the record, and the Court's finds the ALJ's assessment of Plaintiff's subjective testimony and the objective medical evidence to be reasonable and supported by substantial evidence.  *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).

Because the ALJ fully explored the pertinent medical evidence relating to the credibility determination, the Court finds the ALJ's stated rationale pertaining to the objective medical evidence is a valid clear and convincing reason for the ALJ's adverse credibility finding.  *See, e.g., Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (finding that the "ALJ gave specific, clear and convincing reasons for discounting [the claimant's] testimony" where the ALJ found, in part, that "no objective medical evidence" supported the claimant's "descriptions of her pain and limitations"); *Regennitter v. Commissioner*, 166 F.3d 1294, 1297 (9th Cir. 1998) (explaining that a determination that a claimant's complaints are "inconsistent with clinical observations" can satisfy the clear and convincing requirement); *Bifarella*, 51 F. Supp. 3d at 934–35 (finding that the ALJ's rationale relating to an inconsistency between the plaintiff's statements and the objective medical evidence was a valid clear and convincing reason for an adverse credibility finding where the ALJ addressed the pertinent evidence and reached an "interpretation of the objective evidence [that] was reasonable").

### b. Conservative Treatment

In the ALJ's discussion of Plaintiff's credibility, the ALJ states that "despite [Plaintiff's] allegations of disabling manipulative limitations, this is not supported by the medical evidence which reflects only . . . routine and conservative treatment for her alleged symptoms[.]"  (AR 24.) Plaintiff does not specifically challenge this finding, but contends that Plaintiff "did not receive only conservative treatment for her upper extremity problems—she received epidural steroid injections and neuroplasties in the cervical spine and nerve blocks in the shoulder[.]"  (Doc. 14 at 35.)

"The treatment [a claimant] received, especially when conservative, is a legitimate consideration in a credibility finding." *McKnight v. Comm'r of Soc. Sec.*, No. 1:12-cv-00726-AWI-JLT, 2013 WL 12073218, at *2 (E.D. Cal. Sept. 2013) (citing *Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999)). In other words, "[t]he conservative nature of [a] plaintiff's treatment provides a clear and convincing reason for rejecting [a] plaintiff's statements concerning the severity of her impairments." *Bifarella v. Colvin*, 51. F. Supp. 3d 926, 935 (E.D. Cal. 2014) (citing *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007)); *see also*, *e.g.*, *Parra*, 481 F.3d at 751 ("[E]vidence of conservative treatment is sufficient to discount a claimant's testimony regarding severity of an impairment." (citation omitted)). "According to agency rules, 'the individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints, or if the medical reports or records show that the individual is not following the treatment as prescribed and there are no good reasons for this failure.'" *Molina*, 674 F.3d at 1113 (quoting SSR 96-7p).

Here, the ALJ specifically found that Plaintiff's treatment for her "manipulative limitations,"[6] i.e., her ability to reach, handle, and finger, was conservative. (AR 24.) Plaintiff testified that she was unable to lift and carry a gallon of milk or button, tighten, or open jars, because her hands her so much. (AR 46.) As noted by the ALJ, the record contains no evidence of any recommended surgery for Plaintiff's alleged manipulative limitations and reflects at most treatment in the form of over-the-counter pain medications (Naproxen, ibuprofen) and physical therapy. (*See* AR 24; *see, e.g.,* AR 673, 689.) This is conservative therapy. *See, e.g., Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir. 1995) ("'Conservative treatment' has been characterized by the Ninth Circuit as, for example, 'treat[ment] with an over-the-counter pain medication.'") (quoting *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007)). Further, each of the doctors who treated, examined, or otherwise

---

[6] This treatment does not include the epidural steroid injections or neuroplasties Plaintiff received for her back, neck, and shoulder pain, contrary to Plaintiff's contention. (*See* Doc. 14 at 35.) However, the Court notes that even those procedures are described in the medical evidence as "conservative technique[s] in the management of back and leg pain." (*See, e.g.,* AR 401.)

opined on Plaintiff's condition found that Plaintiff had *no* manipulative limitations. (*See, e.g.,* AR 65, 78, 729, 871.) Thus, the Court finds this is a valid clear and convincing reason to discredit Plaintiff's subjective testimony regarding her manipulative limitations.

### c. Daily Activities

Plaintiff further contends the ALJ mischaracterized her testimony regarding her daily activities and that "the ability to perform some daily activities is not inconsistent with a disability claim." (Doc. 14 at 35.) The Court disagrees with Plaintiff's contention and finds that the ALJ properly discredited Plaintiff's testimony based on her activities of daily living.

When a claimant spends a substantial part of the day "engaged in pursuits involving the performance of physical functions that are transferrable to a work setting, a specific finding as to this fact may be sufficient to discredit a claimant's allegations." *Morgan v. Comm'r Soc. Sec.*, 169 F.3d 595, 600 (9th Cir. 1999) (quoting *Fair v. Bowen,* 885 F.2d 597, 603 (9th Cir.1989)); see also *Molina*, 674 F.3d at 1112 ("While a claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting.") (internal quotation and citations omitted). "Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." *Id.* (citations omitted).

At the hearing, Plaintiff testified that she was unable to work because she cannot lift things and has physical impairments. (AR 42.) In describing Plaintiff's activities of daily living, the ALJ stated:

> [Plaintiff] has described daily activities which are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations. Specifically, [Plaintiff] has endorsed the ability to attend to her personal care without problems, perform household chores such as washing dishes, cleaning the kitchen every other day for two hours, and doing laundry; prepare meals for the family that can take as long as two and a half hours; go for short 15 or 20 minute walks; present for her medical appointments; and shop for groceries every other week for up to two hours

. . . This evidence is inconsistent with [Plaintiff's alleged severity of her symptoms and limitations.

In addition, despite the allegations of symptoms and limitations preventing all work, [Plaintiff] testified that she was able to travel to Mexico in June 2017 . . . Although a vacation and disability are not necessarily mutually exclusive, [Plaintiff's] ability to go on a vacation tends to suggest that the alleged symptoms and limitations may have been overstated.

(AR 24.)  Plaintiff contends the ALJ mischaracterized Plaintiff's testimony regarding her helping around the house and her shopping for groceries.  (Doc. 14 at 20.)

Although Plaintiff's hearing testimony does not contain each of the details listed by the ALJ, those reported daily activities are found elsewhere in the record.  (*See* AR 295–96, 552.)  In function reports completed by Plaintiff, she states that she washes the dishes, cleans the kitchen, cooks dinner, and takes small walks daily.  (AR 294.)  She reported cooking dinner for her husband, daughter and son every day, reported no problems with her personal care, and reported doing laundry, cleaning the counter tops and folding her sheets and blankets.  (AR 294–95.)  She also reported grocery shopping and shopping for household needs every other week for about 2 hours each time.  (AR 296.)  At the hearing, Plaintiff testified that she went grocery shopping and to going for walks.  (AR 44–45.)  She also testified that she went to Mexico in June 2017.[7]  (AR 44.)

The Court finds that such activities tend to suggest that Plaintiff may still be able to perform, on a sustained basis, the basic demands of the light, unskilled jobs identified by the VE.  *See Fair*, 885 F.2d at 603 (if a claimant has the ability to perform activities "that involved many of the same physical tasks as a particular type of job, it would not be farfetched for an ALJ to conclude that the claimant's pain does not prevent her from working"); *see also, e.g., Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175 (9th Cir. 2008) (finding that the ALJ sufficiently explained his reasons for

---

[7] The ALJ considered, as one of many reported activities, Plaintiff's trip to Mexico in June 2017.  (AR 22–23.)  The ALJ acknowledged that "a vacation and a disability are not necessarily mutually exclusive" and stated that the vacation simply suggested, in combination with the rest of Plaintiff's reported daily activities, that the alleged symptoms may have been overstated.  (*See* AR 24.)  Thus, the Court considers the trip to Mexico as just one of Plaintiff's reported daily activities and takes no position on whether the trip, by itself, would be a sufficient reason to discredit Plaintiff's testimony.

discrediting the claimant's testimony because the record reflected that the claimant performed normal activities of daily living, including cooking, housecleaning, doing laundry, and helping her husband managing finances); *Morgan v. Comm'r Soc. Sec.*, 169 F.3d 595, 600 (9th Cir. 1999) (ALJ's determination regarding claimant's ability to "fix meals, do laundry, work in the yard, and occasionally care for his friend's child" was a specific finding sufficient to discredit the claimant's credibility); *Kelly v. Astrue*, 471 F.App'x 674, 677 (9th Cir. 2012) (holding that ALJ properly made an adverse credibility finding because, in part, claimant's daily activities included driving, washing the dishes, shopping, and caring for her two children); *Garcia v. Colvin*, No. EDCV 14-2107 AGR, 2015 WL 5568606, at *6 (C.D. Cal. Sept. 22, 2015) (ALJ properly discredited subjective complaints of claimant who suffered from fibromyalgia and rheumatoid arthritis where claimant engaged in light daily activities such as house chores, cooking, vacuuming, mopping, cleaning walls, changing beds, and caring for husband and grandchild); *Ann Cox v. Colvin*, No. 15-cv-00190-JSC, 2015 WL 8596436, at *22 (N.D. Cal. Dec. 14, 2015) (finding ALJ's discrediting of claimant's subject complaints to be proper where claimant, who suffered from fibromyalgia and rheumatoid arthritis, performed household chores, shopped for groceries, performed personal care tasks without assistance, prepared full meals, and drove).

In summary, the Court finds that each of the ALJ's stated bases for credibility determination are supported by substantial evidence. The Court therefore finds that substantial evidence supports the ALJ's ultimate credibility determination and, consequently, that reversal of the ALJ's decision on that basis is not warranted.

## C.     The ALJ Did Not Err in His RFC Assessment

### 1.     Legal Standard

An individual's RFC is his or her ability to do sustained work activities despite limitations from any impairments. 20 C.F.R. § 404.1545(a). The RFC assessment considers any symptoms related to a claimant's impairment(s), such as pain, that may limit what the claimant can do in a

work setting. *Id.* The ALJ must assess all the relevant evidence, including evidence regarding symptoms that are not severe, to determine if the claimant retains the ability to work on a "regular and continuing basis," *e.g.*, eight hours a day, five days a week. *Reddick v. Chater*, 157 F.3d 715, 724 (9th Cir. 1998); *Lester*, 81 F.3d at 833; *Titles II & XVI: Assessing Residual Functional Capacity in Initial Claims*, Social Security Ruling ("SSR") 96–8p (S.S.A. July 2, 1996). The ALJ "is responsible for translating and incorporating clinical findings into a succinct RFC. *Rounds v. Comm'r of Soc. Sec.*, 807 F.3d 996, 1006 (9th Cir. 2015).

### 2.    Analysis

Here, Plaintiff makes a discrete challenge to the ALJ's RFC assessment, contending that the ALJ "erred by failing to quantify Plaintiff's limitations in a specific function-by-function assessment." (Doc. 14 at 32.) However, the ALJ is not required to make a specific function-by-function assessment "where she relies on medical opinions that define the relevant functional limitations," or defines the plaintiff's RFC as "sedentary," "light," or "heavy," which include "well-defined function-by-function parameters" set by regulation, both of which the ALJ did here. *See Kelley v. Colvin*, 650 F. App'x 482, 483 (9th Cir. 2016); *Buckner-Larkin v. Astrue*, 450 F. App'x 626, 627 (9th Cir. 2011).

Here, the ALJ's RFC assessment stated that Plaintiff:

> [H]ad the [RFC] to perform *light work as defined in 20 CFR 404.1567(b)* except with the following limitations: is essentially illiterate in the English language; could never climb ladders, ropes, and scaffolds; could occasionally climb ramps and stairs; could occasionally balance, stoop, kneel, or crouch; could never crawl; could never [be] around hazard such as moving, dangerous machinery or unprotected heights.

(AR 22) (emphasis added). The ALJ also relied upon the opinions of Dr. Rios, Dr. Panek, and Dr. Ahmed, each of which include a detailed function-by-function assessment of Plaintiff's RFC. (*See* AR 26.) Thus, the ALJ was not required to include a specific function-by-function assessment of Plaintiff's RFC, and the RFC assessment is supported by substantial evidence. *See Kelley*, 650 F. App'x at 483; *Buckner-Larkin*, 450 F. App'x at 627.

# V. CONCLUSION AND ORDER

After consideration of Plaintiff's and Defendant's briefs and a thorough review of the record, the Court finds that the ALJ's decision is supported by substantial evidence and is therefore AFFIRMED. The Clerk of this Court is DIRECTED to enter judgment in favor of Defendant Andrew Saul, Commissioner of Social Security, and against Plaintiff.

IT IS SO ORDERED.

Dated:   **October 15, 2019**                          /s/ *Sheila K. Oberto*
                                                       UNITED STATES MAGISTRATE JUDGE